UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODERICK MOON,

                Petitioner,                        Case Number 04-10369

v.                                          Honorable David M. Lawson

TIM LUOMA,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Roderick Moon, currently confined at Alger Maximum Correctional Facility in Munising, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of first-degree murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, following a jury trial in the Genesee County, Michigan circuit court in 1997. He was sentenced to life imprisonment without the possibility of parole on the murder conviction, a concurrent term of 25 to 50 years imprisonment on the assault conviction, and a consecutive term of two years imprisonment on the felony firearm conviction. The petitioner alleges that he is in custody in violation of federal law, making a variety of complaints about the conduct of his trial and the performance of his attorneys. The respondent filed a response to the petitioner asserting that the claims some of the claims are procedurally defaulted and the rest lack merit. The Court concludes that the petitioner's claims lack merit. The petition will therefore be denied.

I.

The petitioner's convictions stem from the shootings of Centoria Byas, who died from the gunshot wound, and Crystal Gipson, who survived, outside Dion's Mini-Mart in Flint, Michigan during the early morning hours on October 16, 1996. At trial, Crystal Gipson testified that she and Centoria Byas walked to Dion's to get cigarettes, pop, and beer. The petitioner, who worked at the store, started talking to Byas. Gipson saw her neighbor, Tony, in the store and asked him to drive her and Byas back to her house. They all left the store together and went to Tony's car. Gipson got into Tony's car, but Byas went back into the store because she forgot her cigarettes. When Byas did not return, Gipson went back into the store to get her and saw that Byas' face was swollen and marked. Byas looked like she had been in a fight, and Byas' money was on the floor. The petitioner said he had to "check" Byas because she had been disrespecting him. Gipson replied that she just wanted to get Byas and leave. Byas asked Gipson to pick up her money. Gipson started to do so, but the petitioner put a gun to her head and told her to leave the money. Byas came from behind the counter, and the petitioner hugged her and told her that everything was alright.

Gipson and Byas left the store, but the petitioner followed them outside. The petitioner asked Byas if she knew him, but she said that she did not. Then the petitioner said "that ain't good enough, I'm fittin' to kill both you'll [sic] whores." Trial Tr. vol. I, 114, Mar. 19, 1997. The petitioner fired a shot in the air and then shot Byas in the head. He and Gipson struggled and then he shot her in the head, but she did not lose consciousness. Lying on the ground, Gipson heard the petitioner say, "Well, I killed them bitches, you don't got to worry about them no more." *Id.* at 116. When Gipson could no longer see the petitioner, she got up, checked Byas' pulse, and ran down the street to a friend's house. Gipson was hospitalized for two weeks after the shooting. She suffered

some nerve damage but no memory loss from the shooting. The bullet remains lodged in the top of her skull. Gipson identified the petitioner as the shooter at trial and stated that she previously had seen him working at the store but did not know his name.

Joy Anderson, who also worked at the store that night, testified that she was working with the petitioner at the store at the time of the shooting. Prior to the shooting, the petitioner showed her that he had a gun in his pocket. Byas and Gipson came into the store around 1 a.m. and conversed with the petitioner. They left the store, but Byas came back in for cigarettes. Ms. Anderson rang up the purchase, and Byas paid with a twenty dollar bill. Ms. Anderson gave Byas seventeen dollars in change, all in single dollar bills. As Byas was counting her change, the petitioner asked Byas, "[D]id you call me a bitch?" Trial Tr. vol. II, 166, Mar. 20, 1997. Byas did not respond and kept counting her change. Anderson testified that the petitioner grabbed Byas and banged her head against the counter repeatedly. When the petitioner finally stopped, Anderson told Byas, who had marks on her face, to leave the store. Anderson placed a called another store to ask for help, so she said that she did not know exactly what happened next. While she was on the phone, Byas and the petitioner left the store. Then Anderson heard three gunshots, so she dropped to the floor. The petitioner came back in the store with the gun in his hand and said, "[W]e ain't got to worry about them no more." Id. at 171-72. Anderson looked outside and saw two bodies on the ground. She did not see the shootings. The petitioner asked Anderson if she was going to tell on him, and she said no. The petitioner went back outside, and Anderson locked the door and called 911, Dion Savage, the store owner, and her parents. She turned off the lights and waited in the cooler area until the police had detained the petitioner.

David Stephens, a forensic serologist with the Michigan State Police, testified that he found small human blood stains on the side of the petitioner's right shoe, his pant legs, and the upper portion of his sweatshirt. He said that the stains were not from splatters or drips, but from contact with blood or an object with blood on it. Stephens could not say whether the blood came from the petitioner or the victims, or whether the blood had been on the petitioner's clothing before the shooting. Police did not obtain blood samples to determine the source of the blood stains.

Pathologist Barry DeWitt testified that Centoria Byas died from a single gunshot wound to the head. The fatal bullet was not recovered. There was no evidence of close range firing, but DeWitt stated that hair fibers could obscure such evidence. DeWitt further testified that blood could have splattered from the entrance or exit wound so that a person fairly close could have gotten blood on him.

Dion Savage, the store owner, was not present at the time of the shooting. He received a call from Joy Anderson, whom he described as frantic and hysterical, telling him that a shooting had occurred at the store. While Savage was on the witness stand, a videotape from the store's surveillance camera was played for the jury. Over defense objection, Savage testified that the tape showed a gun in the petitioner's hand at a certain point in time.

Flint Police Officers Carter McDonald and Nicholas Cousins testified that Ms. Byas' body was lying 15 to 20 feet from the store entrance. A spent .357 casing was found 19 feet from her body. The petitioner was standing outside the door of the store when they arrived and appeared to be talking to someone inside. When they questioned the petitioner, he said that he saw three black males run by and he heard shots, but he could not provide descriptions. They did not notice blood on the petitioner's face, hands, or upper body, and he was not armed. The officers put the petitioner

in their patrol car and tried to get Joy Anderson to open the store, but she was hysterical and would not unlock the door. They then saw the petitioner climb to the front seat of the patrol car, exit the car, and flee. The officers chased and caught the petitioner.

Flint Police Officer Harland Green testified that a few minutes later, an unidentified man approached and told him that he saw the petitioner take a gun to a house a block away at 802 Stockdale and give it to two black males. The man did not want to get involved and refused to provide his name. The defense objected to this hearsay testimony, but the trial court allowed it to be admitted as a present sense impression. Officer Green further testified that the two men at the house, Kenneth Davis and Roderick Clemons, would not open the door for police for 40 minutes but eventually consented to a search. A .357 revolver was found in a paper bag in an air duct in the hallway floor. A Michigan State Police ballistics expert testified that the .357 casing found near Byas' body had been fired from the recovered weapon, but he could not say when it had been fired.

Kenneth Davis and Roderick Clemons were subpoenaed to testify at trial, but they failed to appear. Detective Sergeant Alan Barron testified about his efforts to locate Davis and Clemons. Despite contacting relatives and employers and running a LEIN check, he could not find them. Defense counsel requested a missing witness instruction, but the court denied the request because the officers made efforts to locate the witness.

The petitioner did not testify at trial. At the close of trial, the jury found him guilty of first-degree murder, assault with intent to commit murder, and felony firearm. The trial court sentenced him to life imprisonment, a concurrent term of 25 to 50 years imprisonment, and a consecutive term of two years imprisonment on those convictions.

Following sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals raising the following claims: (1) the petitioner's right to a fair trial was violated when the prosecution failed to use due diligence to find witnesses Davis and Clemons; (2) the petitioner was denied a fair trial by the admission of hearsay testimony regarding the location of the gun under the present sense impression exception; (3) the trial court erred in permitting Dion Savage to testify that the security tape showed the petitioner holding a gun; (4) the prosecutor violated the petitioner's right to remain silent when he argued that it was "uncontradicted" that the petitioner committed the shootings; and (5) the petitioner was denied a fair trial when the prosecutor told the jury that they must convict unless they have a "solid reason" to doubt the defendant's guilt. The court of appeals affirmed the convictions. *People v. Moon*, No. 203000, 1999 WL 33453882 (Mich. Ct. App. Feb. 26, 1999) (unpublished). The petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Moon*, 463 Mich. 934, 622 N.W.2d 64 (2000).

The petitioner thereafter filed a motion for relief from judgment in the trial court, raising claims concerning the admission of the serologist's testimony; prosecutorial misconduct as to the bolstering of witness testimony, shifting the burden of proof, and failing to investigate; the ineffectiveness of trial and appellate counsel; and cumulative error. The trial court denied the motion, finding that the petitioner failed to establish cause and prejudice under Michigan Court Rule 6.508(D)(3). *People v. Moon*, No. 96-54811-FC (Genesee Co. Cir. Ct. Apr. 11, 2002). The petitioner filed an application for leave to appeal this decision with the Michigan Court of Appeals, which was denied for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).

*People v. Moon*, No. 247568 (Mich. Ct. App. July 21, 2003) (unpublished).  The petitioner filed an

application for leave to appeal in the Michigan Supreme Court, which was similarly denied.  *People*

*v. Moon*, 469 Mich. 999, 675 N.W.2d 594 (2004).

The petitioner dated the present petition for writ of habeas corpus March 3, 2004, and it was

filed by the Court on March 12, 2004.  The petitioner asserts the following claims:

I.     Petitioner was denied a fair trial, in violation of due process, confrontation, and compulsory process, when the prosecution failed to exercise due diligence to produce two key witnesses that the prosecution had placed on the list of witnesses it intended to produce at trial and failed to overcome the presumption that the petitioner was prejudiced.

II.    Petitioner was denied a fair trial, in violation of his right of confrontation, where the trial court allowed the prosecution, over defense hearsay objection, to introduce as "present sense impression," the testimony from a police officer that an unidentified person told him that he had seen petitioner, more than 17 (and perhaps more than 26) minutes earlier, take the alleged murder weapon to the house where it was eventually recovered.

III.   The trial court erred in allowing a "lay witness" who did not personally observe any of the events in question to testify that the videotape from inside the store showed a gun in petitioner's hand.

IV.    The prosecutor's repeated argument that it was "uncontradicted" that petitioner committed the shootings violated petitioner's federal constitutional right to remain silent.

V.     Petitioner was denied a fair trial, in violation of due process and the right to trial by jury, where the prosecutor told the jury that they had to have a "solid reason" to doubt the defendant's guilt for it to qualify as a reasonable doubt.

VI.    Petitioner was denied effective assistance of trial and appellate counsel(s), pursuant to the standard set forth in *Strickland*.

VII.   The trial court abused its discretion when it allowed the prosecution to admit the testimony of a forensic serologist who indicated that there was a possibility that the blood found on petitioner's clothing could have been the petitioner's or the victim's.

VIII.    The cumulative effect of all errors denied petitioner due process of law and a fair trial guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

The respondent filed an answer opposing the petition.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this

Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The petitioner's first claim is that he is entitled to habeas relief because the prosecutor failed to demonstrate due diligence in attempting to produce two witnesses, Kenneth Davis and Roderick Clemons, who allegedly received the murder weapon after the shootings. The respondent contends that this claim lacks merit. The Michigan Court of Appeals denied relief on this claim, finding that the petitioner failed to establish that he was prejudiced by the prosecutor's failure to produce the witnesses at trial. *Moon*, 1999 WL 33453882 at *1.

This claim is based on state law and therefore is not cognizable in federal habeas corpus proceedings. State law requires the prosecution to send a list of all witnesses it plans to call at least 30 days before trial and to exercise due diligence to produce any witness identified on that list. Mich. Comp. Laws § 767.40a; *People v. Wolford*, 189 Mich. App. 478, 484, 473 N.W.2d 767, 770 (1991). The alleged failure to comply with state law does not amount to an actionable claim on habeas review. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000). The Court may grant a writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Robinson v. Stegall*, 355 F.3d 916, 917 (6th Cir. 2004).

The Confrontation Clause is not implicated because Davis and Clemons did not testify at trial. The Confrontation Clause applies only to the witnesses, and a criminal defendant has no right

to confront a person who provides no evidence at trial. *See Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit."). "The confrontation clause does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985); "[T]he Confrontation Clause is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v.. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985).

Moreover, the petitioner has no right under federal law to have the state produce witnesses, unless he seeks assistance in securing the witnesses himself through the court's subpoena power. He made no such effort in this case. The petitioner is not entitled to relief on this claim.

### B.

The petitioner next claims that he is entitled to habeas relief because the trial court erred in admitting, as a present sense impression, testimony from a police officer that an unidentified person told him that the petitioner had taken the murder weapon to a house where it was later recovered. The Michigan Court of Appeals agreed that the trial court erred in admitting the statements as a present sense impression. However, the court found that the error likely did not contribute to the guilty verdict given the overwhelming evidence that the defendant possessed a gun and used it to shoot the victims.

Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting

*Patterson v. New York*, 432 U.S. 197, 202 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). The fundamental principle of justice at issue here is the right of confrontation provided by the Sixth Amendment to the United States Constitution.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Amendment applies to state court proceedings, *Pointer v. Texas*, 380 U.S. 400, 403 (1965), and it "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). Since the petitioner's trial, the interpretation of the Confrontation Clause has undergone a radical transformation. *See Crawford v. Washington*, 541 U.S. 36 (2004). The Sixth Circuit has explained, however, that the rules announced by *Crawford* are not retroactive to cases tried before *Crawford* was decided. *See Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005). This Court, therefore, must examine the petitioner's claims of constitutional trial error under the law in effect at the time of the petitioner's direct appeal.

As of that time, the Supreme Court had held that the right of confrontation does not require "an actual face-to-face encounter at trial in every instance in which testimony is admitted against a defendant. Instead, . . . the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Maryland v. Craig*, 497 U.S. 836, 847-48 (1990). In *Ohio v. Roberts*, 448 U.S. 56 (1980), which was overruled by *Crawford*, the Supreme Court explained that the Confrontation Clause permitted the introduction of hearsay testimony only when (1) the declarant is unavailable to testify and (2)

the testimony bears "adequate indicia of reliability." *Id.* at 66. Those indicia of reliability must be inherent in the statement itself and the circumstances under which it is made, without reference to corroborating or other evidence at trial. *See Idaho v. Wright*, 497 U.S. 805, 822 (1990). "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. The examples of "firmly rooted" hearsay exceptions offered by *Roberts* included dying declarations, cross-examined prior trial testimony, and preliminary hearing testimony given under oath. *Id.* at 66 n.8. This Court cannot conclude that the statement of an anonymous man to the police bears such reliability.

But even if the statement was erroneously admitted, habeas relief is available only if the error was not harmless. *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003). The state court concluded that "it is highly probable that the erroneously admitted testimony did not contribute to the verdict." *Moon*, 1999 WL 33453882, at *2. The state court did not cite *Chapman v. California*, 386 U.S. 18 (1967), which sets forth the rule that the states must apply on direct review when evaluating the effect of non-structural constitutional error in criminal proceedings.

The Sixth Circuit recently retooled the standard of review of harmless error decisions in habeas cases in light of new Supreme Court precedent:

> In *Fry* [*v. Pliler*, __U.S.__, 127 S. Ct. 2321 (2007)], the Supreme Court held that a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*], 507 U.S. 619 . . . [(1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* . . . ." 127 S. Ct. at 2328. *Fry*, 127 S. Ct. at 2326-27, therefore overruled *Eddleman* [*v. McKee*], 471 F.3d [576,] 583 [(6th Cir. 2006)], where we concluded that "AEDPA replaced the *Brecht* standard with the standard of *Chapman* plus AEDPA deference when, as here, a state court made a harmless-error determination." To resolve the harmless

error issue, we now must ask whether the constitutional violation "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). If "'the matter is so evenly balanced' that this Court has 'grave doubt' as to the harmlessness of the error, it 'should treat the error, not as if it were harmless, but as if it affected the verdict ( *i.e.*, as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')." *Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1994)).

*Vasquez v. Jones*, __ F.3d __, __, 2007 WL 2176985, at *7 (6th Cir. July 24, 2007).

This Court concludes that the state court applied the harmless error review in a reasonable manner. After reviewing the record, this Court has little doubt as to the harmlessness of the evidentiary error and its concomitant impact on the constitutional error under the Confrontation Clause. There was other testimony presented that the petitioner possessed a gun, including the eye witness testimony of Crystal Gipson and Joy Anderson. This testimony was much more devastating to the defense than the erroneously admitted hearsay. The state court's conclusion that the error was harmless did not unreasonably apply Supreme Court precedent, and the Court cannot say that admission of the hearsay evidence has a substantial and injurious effect on the jury's verdict. Therefore, the petitioner is not entitled to habeas relief on this ground.

## C.

The petitioner next asserts that he is entitled to habeas relief because the trial court erred in allowing the store owner, Dion Savage, to testify about the store videotape and give his opinion that the tape showed a gun in the petitioner's hand. The Michigan Court of Appeals agreed that the admission of this testimony was error but found the error harmless.

As noted, state trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental

fairness" may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Having reviewed the record, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof. Assuming that the trial court erred in allowing the disputed testimony as a matter of Michigan law, the petitioner has not shown that it rendered his trial fundamentally unfair. The store owner was not deemed to have special knowledge about the shooting or the videotape; he merely expressed his opinion. The jury members were able to review the videotape and make their own determinations as to its contents.

Further, even if the error could be considered a constitutional violation, such error was harmless under the standard set forth in *Vasquez*, 2007 WL 2176985, at *7. The testimony of Ms. Gipson and Ms. Anderson provided ample evidence for the jury to find the petitioner guilty of first-degree murder, assault, and felony firearm beyond a reasonable doubt. Habeas relief is not warranted on this claim.

### D.

The petitioner fourth and fifth claims are that he is entitled to habeas relief because the prosecutor engaged in misconduct by (1) stating that it was "uncontradicted" that the petitioner committed the shootings, in violation of his right to remain silent; and (2) telling the jury members that they had to have a "solid reason " to doubt the petitioner's guilt. His seventh claim is that the trial court erred in admitting testimony of a forensic serologist regarding blood found on the petitioner's clothing. The petitioner raised the misconduct claims in his direct appeal, but the state court of appeals denied relief because the petitioner did not object at trial:

> Defendant did not object at trial to the comments of which he now complains. To
> preserve for appeal an argument that the prosecutor committed misconduct during

> trial, a defendant must object to the conduct at trial on the same ground as he asserts
> on appeal. In the absence of a proper objection, review is precluded unless a curative
> instruction could not have eliminated the prejudicial effect or the failure to consider
> the issue would result in a miscarriage of justice.

*Moon*, 1999 WL 33453882, at *3. The court then proceeded to assess each of the claims and

concluded that none of them amounted to plain error warranting further review or relief. The

petitioner raised the claim regarding the serologist's testimony in a motion for relief from judgment

in the trial court. The trial court rejected this claim because the petitioner failed to object at trial and

the admission of the testimony did not amount to plain error. "Having failed to comply with MCR

6.508(D)(3), defendant's motion for relief from judgment is Denied." *People v. Moon*, No. 96-

54811-FC, slip op. at 6 (Genesee Co. Cir. Ct. Apr. 11, 2002). The court of appeals and supreme

court affirmed because the petitioner "failed to meet the burden of establishing entitlement to relief

under MCR 6.508(D)." *People v. Moon*, No. 247568 (Mich. Ct. App. July 21, 2003) (unpublished);

*People v. Moon*, 469 Mich. 999, 675 N.W.2d 594 (2004). The respondent contends that these claims

are procedurally defaulted because petitioner failed to preserve these issues and the state courts

relied on this failure in denying petitioner's claims.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas review
> of the claims is barred unless the prisoner can demonstrate cause for the default, and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files

an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court

at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to

comply with a state procedural rule that required him to have done something at trial to preserve his

claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202-03 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Rust*, 17 F.3d at 162.

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and alternatively on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Abela v. Martin*, 380 F.3d 915, 922-24 (6th Cir. 2004); *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and

apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a defendant must object at trial to instances of prosecutorial misconduct or the admission of evidence. Although Michigan state courts "frequently waive the contemporaneous objection rule when they perceive the issue to have significant constitutional import," the contemporaneous objection rule was firmly established with respect to claims of prosecutorial misconduct and the admission of evidence at the time of the petitioner's trial. *See People v. Buckey*, 424 Mich. 1, 17-18, 378 N.W.2d 432, 440 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 99-100, 435 N.W.2d 772, 775 (1989). Therefore, the contemporaneous objection rule is an adequate and independent state ground on which to deny relief. *See Buckley*, 424 Mich. at 17-18, 378 N.W.2d at 440; *Sharbnow*, 174 Mich. App. at 99-100, 435 N.W.2d at 775.

It also appears that the Michigan courts actually enforced the procedural rule in this case. The last state court to issue a reasoned opinion on the misconduct claims, the Michigan Court of Appeals, held that the claims were not preserved because "[d]efendant did not object at trial to the comments of which he now complains." *Moon*, 1999 WL 33453882, at *3. The court then reviewed the unpreserved claims for plain error and found none. Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). The trial court, which the admission of the serologist's testimony in the post-conviction motion, likewise rejected the claim because the petitioner failed to object at trial and could not establish plain error. The trial court specifically invoked Mich. Ct. R. 6.508(D)(3), which the Sixth Circuit has held is a firmly established and regularly followed state ground precluding subsequent federal habeas

-18-

review absent a showing of cause and prejudice. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir. 2000) (citing *Rogers v. Howes*, 144 F.3d 990 (6th Cir. 1998)).

Because it appears that the petitioner has procedurally defaulted these claims, the remaining question is whether the petitioner has demonstrated "cause" for the failure to adhere to the procedure in place, and "prejudice" that flows the application of the rule. *See Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006). Ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002). In fact, a "claim of ineffective assistance of counsel . . . can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim." *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The petitioner alleges in his sixth ground for relief that his trial attorney was ineffective for failing to object to these instances of alleged prosecutorial misconduct.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if counsel's representation falls below an "objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must

show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

To determine whether defense counsel's failure to object to the admission of the serologist's testimony and the alleged instances of prosecutorial misconduct fell outside the wide range of professionally competent assistance, the court will evaluate the cited instances to determine if competent counsel would have objected at trial.

1.

The petitioner first asserts that the prosecutor engaged in misconduct by improperly telling the jury that it was "uncontradicted" that the petitioner committed the shootings and that the jury must have a "solid reason" to doubt the defendant's guilt before it could return a not guilty verdict. During closing argument, the prosecutor stated that Crystal Gipson

> doesn't remember everything, but she remembers who shot her in the head. She remembers who shot her friend and she told you it was the defendant. It's uncontradicted that he is the one that did the shooting, uncontradicted. . . . Joy is screaming, I don't want them to kill me, I don't wanna get killed or anything. Well, what does he say? I did it, they dead. He did it. The evidence is uncontradicted, he killed her.

Trial Tr. vol. III, 446-48, Mar. 21, 1997. Regarding the burden of proof, the prosecutor stated as follows:

> Also our burden is not beyond a shadow of a doubt, we talked about that earlier on voir dire. It's beyond a reasonable doubt and reasonable doubt is one based upon logic and common sense. Two and two is four, not three. Common sense. Reasonable doubt. You have to have a reason for it, a solid reason, not just a whimsical, we all have doubts in life, you know. Am I going to win the Lotto? I

-20-

doubt it, but, you know, hey, fellows, I could. But a real, reasonable doubt, something based upon reason. Keep that in mind when you look at the evidence.

*Id.* at 445.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

When assessing the prosecutor's conduct, the court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id*. at 516. The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the

accused." *Millender*, 376 F.3d at 528 quoting *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)).

In *Griffin v. California*, 380 U.S. 609 (1965), the Supreme Court held that neither the court nor the prosecutor may invite the jury to infer guilt from the defendant's decision not to testify. "It is axiomatic that a defendant in a criminal trial need not testify or produce any evidence, and that a prosecutor may not comment on the absence of such." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994). However, a prosecutor ordinarily is "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel*, 682 F.2d at 607-08 (citing *Donnelly*, 416 U.S. 637 (1974)). The prosecutor may summarize the evidence and comment on its quantitative and qualitative significance. *Bond*, 22 F.3d at 669.

The prosecutor's remarks that the evidence was uncontradicted did not constitute an impermissible comment upon the petitioner's failure to testify. In *Lundy v. Campbell*, 888 F.2d 467, 478 (6th Cir. 1989), the Sixth Circuit held that a prosecutor's statements during closing argument that the "only story" concerning the crimes came from the state's witnesses did not deprive the defendant of a fair trial. In so ruling, the Sixth Circuit held that the comment was not manifestly intended to reflect upon the defendant's silence, nor was it of such character that the jury would naturally and necessarily take it as such. Because the prosecutor did not engage in misconduct, the petitioner's attorney was not ineffective for failing to object.

Even if the comment was improper, the comments were not so flagrant that the petitioner is entitled to relief. The statement was isolated and did not tend to mislead the jury. Moreover, the evidence against the petitioner was formidable. Finally, at the close of argument, the trial court instructed the jury that "every defendant has the absolute right not to testify, and when you decide

the case you must not consider the fact he did not testify, it must not affect your verdict in any way." Trial Tr. vol. III, 480, Mar. 21, 1997. Even if trial counsel should have objected, the petitioner was not prejudiced. The petitioner's attorney was not ineffective for failing to object to the prosecutor's comment.

The petitioner next claims that the prosecutor engaged in misconduct by telling the jury that it must have a "solid reason" to doubt the defendant's guilt in order to return a verdict of not guilty. The prosecutor's disputed comments did not deprive the petitioner of a fair trial because both the prosecutor and the trial court explained to the jurors that the prosecution was required to prove each element of the crimes and that the attorneys' arguments were not evidence. The trial court instructed the jury that the defendant was presumed innocent, the defendant was not required to prove his innocence or to do anything, and the jurors should find the defendant not guilty unless they were satisfied beyond a reasonable doubt that the defendant was guilty. Trial Tr. vol. III, 478-81, Mar. 21, 1997. The prosecutor's argument remained within the bounds of propriety. The petitioner's attorney was not ineffective for failing to object to this comment.

## 2.

The petitioner next claims that his trial counsel was ineffective for failing to object to testimony by a forensic serologist regarding blood found on the petitioner's clothes. Michigan State Police Officer David Stephens testified and identified several places where he found blood on the clothing the petitioner wore the night of the crime. He stated the blood stains appeared to be contact stains rather than stains from a drip or a spatter. Trial Tr. vol. II, 371-72, Mar. 20, 1997. However, he could not connect the blood to the victim or the petitioner:

Q. Can you tell us anything else about the blood?
A. No, sir.

Q.  In order to do that what would you need to have?
A.  I would need to have a blood sample from both the victim and the suspect or if there are more than one suspect or victims than [sic] all – actually all people involved.
Q.  And you didn't have that?
A.  That's correct.

*Id.* at 374.  Because Officer Stephens was unable to link the blood to the petitioner or the victim, the petitioner believes the testimony was not probative.  Furthermore, the petitioner contends that the admission of this testimony was unfairly prejudicial as it suggested to the jury that the victim's blood was on the clothing.

As noted previously, state trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See, e.g., Estelle*, 502 U.S. at 67-68. Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate due process and warrant habeas relief.  *Bugh*, 329 F.3d at 512.  Having reviewed the record, this Court concludes that the admission of Officer Stephens' testimony did not deny the petitioner a fair trial.  The petitioner's attorney had the opportunity to cross-examine the witness. He was not ineffective for failing to object to the testimony.  Further, even if the admission of the testimony could be considered a constitutional violation, such error was harmless under the standard set forth in *Vasquez*, 2007 WL 2176985, at *7.  The testimony of Ms. Gipson and Ms. Anderson provided ample evidence for the jury to find the petitioner guilty of first-degree murder, assault, and felony firearm beyond a reasonable doubt.

The petitioner's claims that the prosecutor engaged in misconduct by telling the jury that it was uncontradicted that the petitioner shot the victims and that it must have a "solid reason" to doubt the defendant's guilt, and the claim that the trial court erred in admitting Officer Stephens' testimony are procedurally defaulted.  The petitioner is not entitled to habeas relief on these claims.

E.

The petitioner makes several other claims of ineffective assistance of counsel. The petitioner states his trial attorney (1) should have objected to the prosecutor's comments during closing argument regarding the blood found on the petitioner's clothing and (2) failed to determine whether the videotape admitted at trial was authentic. He argues that his appellate attorney was ineffective for failing to raise on appeal claims of ineffective assistance of trial counsel, improper admission of evidence, and prosecutorial misconduct. As noted above, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

1.

During closing argument, the prosecutor referenced the blood found on the petitioner's clothing. Officer Stephens testified that blood samples from the petitioner and the victim were not available for comparison testing. During closing argument, the prosecutor stated,

> It would have been nice if we could have had some further lab stuff done with the defendant's blood and other people's blood and see whose blood it is. It could have been there before? Maybe. Did it get there that night? Maybe. . . . But as far as the blood it might have been there before. No one saw how it got there. You don't need that to make your decision.

Trial Tr. vol. III, 471-72, Mar. 21, 1997. The petitioner contends that his attorney was ineffective for failing to object to this argument, which the petitioner believes infringed on his right to remain silent by suggesting he should have come forward with a blood sample for testing.

The petitioner also contends that his trial attorney was ineffective for failing to investigate whether the security videotape from the convenience store was authentic. The petitioner states the

-25-

videotape was distorted, and his attorney should have investigated whether the video was the original or merely a copy.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This Court does not believe that trial counsel's failure to object to the prosecutor's statements or determine whether the video was an original or a copy deprived the petitioner of a fair trial. Furthermore, to show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Even without these statements by the prosecutor or the video, the outcome would not have been different. The evidence against the petitioner was overwhelming. The petitioner is not entitled to relief on these claims.

2.

The petitioner contends that his appellate attorney was ineffective for failing to raise claims of ineffective assistance of trial counsel, improper admission of evidence, and prosecutorial misconduct during his direct appeal. To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. Appellate counsel need not raise every nonfrivolous argument on direct appeal, but he or she must exercise reasonable professional judgment. *Joshua v. DeWitt*, 341 F.3d 430, 441, (6th Cir. 2003) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

The petitioner's appellate attorney was not ineffective for failing to raise these claims. As noted previously, the petitioner has not identified any instance of ineffective assistance of trial counsel or prosecutorial misconduct. The only meritorious claim regarding the erroneous admission of evidence, that related to the hearsay testimony admitted as a present sense impression, was actually raised on appeal and correctly determined to be harmless error. The remaining claims have no merit. "[T]here can be no constitutional deficiency in counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). The petitioner is not entitled to relief on his ineffective assistance claims.

F.

Finally, the petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial. Because the petitioner's discrete claims lack merit, he cannot establish that habeas relief is warranted based upon a claim of cumulative error. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006). The Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). The petitioner is not entitled to habeas relief.

III.

For the foregoing reasons, the Court finds the petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 28, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 28, 2007.

s/Felicia M. Moses
FELICIA M. MOSES